UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————

№ 05-CV-1215 (JFB) (JMA)

———————

JERMAINE SUTTON,

Plaintiff,

VERSUS

DETECTIVE GEORGE DUGUID, DETECTIVE BANERO, DETECTIVE CARTER, POLICE
OFFICER ALACEYA AND POLICE OFFICER MORENO,

Defendants.

———————

MEMORANDUM AND ORDER
May 16, 2007

———————

JOSEPH F. BIANCO, District Judge:

Plaintiff Jermaine Sutton brings this action, alleging claims for violations of his civil rights under 42 U.S.C. § 1983. Specifically, plaintiff alleges claims of false arrest and imprisonment, malicious prosecution, illegal search and seizure and excessive force against defendants Detective George Duguid ("Detective Duguid"), Detective Benero[1] ("Detective Benero"), Detective Carter ("Detective Carter"), Police Officer Alicea[2] ("Officer Alicea") and Police Officer Moreno ("Officer Moreno"), arising out of an incident that occurred in September 2003, whereby plaintiff was arrested on charges of Assault, Resisting Arrest, Harassment in the Second Degree and Disorderly Conduct.[3]

———————

[1] Though the caption of the case refers to Detective "Banero", it appears from the motion papers that the correct spelling of defendant's name is "Benero."

[2] Though the caption refers to Officer "Alaceya," it appears from the motion papers that the correct spelling of defendant's name is "Alicea."

[3] Plaintiff's complaint also alleged a claim of municipal liability against the City of New York. However, plaintiff withdrew all claims against the City of New York by stipulation dated January 25, 2007. Furthermore, in plaintiff's reply in further support of his motion for summary judgment, plaintiff clarified that he is only pursuing the following causes of action: (1) false arrest/false

Defendants now move for summary judgment pursuant to Federal Rule of Civil Procedure 56 on all claims except for plaintiff's claim of excessive force. Plaintiff cross-moves for summary judgment on all claims, including plaintiff's claim of excessive force, and seeks to amend his complaint to add a claim of illegal strip search. For the reasons that follow, defendants' motion is granted in part and denied in part and plaintiff's motion is denied in its entirety.

I. BACKGROUND

A. Facts

The facts described below are taken from the parties' deposition, declarations, affidavits, exhibits and respective Local Rule 56.1 statements of facts. Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 (2d Cir. 2001).

On the evening of September 13, 2003, Detectives Duguid, Benero, and Carter, and Officers Alicea and Moreno were on assignment in the vicinity of 164-01 Foch Boulevard, Queens County, New York, investigating criminal activity, including narcotics sales. (Defs.' 56.1 ¶ 1.)[4] Detective Carter and Officer Moreno were in the area, in an undercover capacity, when they observed two individuals, standing next to a vehicle, who appeared to be engaged in narcotics activity. (Defs.' Ex. C at 144-45.) Detective Carter gave a description of the car, which had its engine running, to his field team, and alerted the field team to "freeze" the car and the individuals around the car. (Defs. 56.1 ¶ 3.)

In the late evening of September 13, 2003, plaintiff visited the apartment of his friend, Terrence Peck ("Peck"), located at 163-11 Foch Boulevard, Queens County, New York, to watch a televised boxing match. (*Id*. ¶ 4.) Peck's apartment is located next to the building in which plaintiff's mother resides. (*Id*. ¶ 5.) According to both parties, illegal drugs are frequently sold in that neighborhood. (*Id*. ¶ 6.) There were approximately fifteen to twenty people present at Peck's apartment watching the boxing match. (*Id*. ¶ 7.)

After the boxing match ended, plaintiff left the apartment with several individuals, including his friend, Ronell Kelly ("Kelly"). (*Id*. ¶ 8.) In addition to Kelly, Zakia Washington and Jodi McMillan ("McMillan") were standing in plaintiff's immediate vicinity while he stood outside the building following the boxing match. (*Id*. ¶ 9.) While standing outside the apartment building, "a big commotion broke out," which involved Kelly. (*Id*. ¶ 10.) Plaintiff heard Kelly say something to the effect of, "what the [expletive] is going on, what the [expletive] is you doing." (*Id*. ¶ 11.) As soon as the commotion broke out,

---

imprisonment against Detectives Duguid and Benero; (2) malicious prosecution against Detective Duguid; (3) excessive force against Detectives Benero and Duguid; and (4) plaintiff is seeking to amend the complaint to add a claim of unlawful strip search against Officer Moreno. (Pl.'s Reply at 2.) Accordingly, Detective Carter and Officer Alicea are dismissed from this case at the outset, as plaintiff alleges no claims against those defendants.

---

[4] Facts cited from one party's Statement of Material Facts are undisputed unless otherwise indicated.

plaintiff tried to "get away" from it. (*Id.* ¶ 13.) Plaintiff alleges he did not know that the individuals involved in the commotion were police officers. (*Id.* ¶ 14.)

As plaintiff tried to get away from the commotion, he felt Detective Benero grab his arm. (*Id.* ¶ 15; Pl.'s 56.1 ¶ 10.) Plaintiff turned, saw a man clutching his arm, and stated, "yo, get up off me." (Defs.' 56.1 ¶ 16.) Detective Duguid approached plaintiff shortly thereafter to assist Detective Benero. (Pl.'s Ex. 12 at 35.) It is undisputed that Detective Benero did not verbally announce himself as a police officer, but, according to Detective Benero, the officers had their shields out when they exited their vehicle. (Pl.'s Ex. 13 at 124, 132.) Detective Duguid, on the other hand, testified to the grand jury that when he excited the vehicle, he had announced that he was a police officer. (Pl.'s Ex. 25 at 9.) However, at plaintiff's criminal trial, Detective Duguid could not recall whether he had announced himself as an officer. (Pl.'s Ex. 12 at 62.)

Plaintiff alleges that he did not know that the individuals were police officers. (Defs. 56.1 ¶ 14.) Specifically, plaintiff testified in his deposition that when the individual grabbed his arm plaintiff

> [D]idn't know what [the individual] was trying to do. He didn't say nothing, nothing didn't come out of his mouth, he didn't mention nothing, say nothing or nothing . . . . [N]othing didn't come out of his mouth, nothing, not a word, not a peep. No police, nothing, yo, come here, let me talk to you, ain't nothing come out of his mouth.

(Pl.'s Ex. 20 at 70.) Furthermore, during plaintiff's criminal trial, plaintiff testified that the officers did not have any badges displayed (Pl.'s Ex. 19 at 303), and that the individuals did not say anything to him at all. (*Id.* at 312, 326.) McMillan also testified at plaintiff's criminal trial and stated that the individual who grabbed plaintiff did not have any visible identification on him. (Pl.'s Ex. 18 at 251.)

Plaintiff admits that he began to resist immediately when the officers made contact with him. (*Id.* ¶ 17.) Plaintiff broke free from the officers' grip and "kept pushing the individuals['] arms away from him." (*Id.* ¶ 18.) According to plaintiff, he succeeded in freeing himself and then stepped back to the sidewalk, at which point he felt the officers "jump on [his] back . . . punch[] [him], [and] kick[] [him]." (Pl.'s Dep. at 81; Pl.'s 56.1 ¶ 14.) During the struggle, plaintiff bit Detective Duguid. (*Id.* ¶ 22.) Detective Duguid struck plaintiff once on the right side of the head. (Pl.'s Ex. 25 at 7; Defs.' Reply 56.1 ¶ 16.) During the course of the arrest, plaintiff refused to give up his arms to be handcuffed. (Defs.' 56.1 ¶ 21.)

Plaintiff was arrested on charges of Assault, Resisting Arrest, Harassment in the Second Degree, and Disorderly Conduct. (*Id.* ¶ 23.) He was handcuffed and taken to the 113th Precinct. (Pl.'s 56.1 ¶ 17.)

Plaintiff received medical attention at the precinct and was then taken to Mary Immaculate Hospital. (Pl.'s Dep. at 120-21.) Plaintiff alleges that he was handcuffed to the hospital bed for at least two days. (Pl.'s Dep. at 104.)

Around the same time of plaintiff's arrest, Officer Alicea seized Kelly, who was standing near the car and who had been identified by a police surveillance team as a possible narcotics dealer. (Pl.'s 56.1 ¶ 7.) Kelly was

arrested on charges of Possession of Marijuana in the Fifth Degree, Disorderly Conduct and Resisting Arrest. (Defs.' 56.1 ¶ 26.)

Plaintiff was indicted on November 6, 2003. (Defs.' 56.1 ¶ 24.) The charge of Resisting Arrest was later dismissed by the criminal court because the court found that "this count was never charged in the Grand Jury." (*Id.* ¶ 25.) Following a bench trial in Queens County Supreme Court, plaintiff was found not guilty on all charges by decision of the Honorable Sheri S. Roman dated October 29, 2004.

### B. Procedural History

Plaintiff filed the complaint in the instant action on March 4, 2005. Defendants moved for partial summary judgment on February 2, 2007. Plaintiff opposed the motion and filed a cross-motion for summary judgment on March 2, 2007. Oral argument was held on the instant motions on May 2, 2007, with supplemental argument by telephone on May 10, 2007.

### II. DISCUSSION

The standards for summary judgment are well-settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249-50 (internal citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247. Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R.*

4

*Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted).

A. False Arrest/False Imprisonment and Unreasonable Search and Seizure[5]

Defendants assert that plaintiff's claims for false arrest and false imprisonment and for unlawful search and seizure must be dismissed, as a matter of law. Specifically, defendants argue that there was reasonable suspicion for the initial "seizure" and that the situation then escalated into one in which there was probable cause to arrest. (Defs.' Reply Mem. at 2.) Plaintiff cross-moves for summary judgment, arguing that defendants lacked both reasonable suspicion to stop and probable cause to arrest.

1. Legal Standard – The Initial Stop

In general, "[t]he police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). In examining whether an officer had reasonable suspicion at the time of the stop, courts "assess the totality of the circumstances supporting the investigatory stop . . . to decide whether the officer's suspicion of wrongdoing has an objective and particularized basis." *United States v. Muhammad*, 463 F.3d 115, 121 (2d Cir. 2006). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States v. Arvizu*, 534 U.S. 266, 273 (U.S. 2002) (quoting *United States v. Cortez*, 449 U.S. 411, 418 (U.S. 1981)). Like probable cause, whether "reasonable suspicion exists is an objective inquiry; the 'actual motivations of the individual officers involved' in the stop 'play no role' in the analysis." *Holeman v. City of New London*, 425 F.3d 184, 190 (2d Cir. 2005) (quoting *Whren v. United States*, 517 U.S. 806, 813 (1996)).

2. Legal Standard – False Arrest

While an investigatory stop requires reasonable suspicion, an arrest requires probable cause. In New York, "false arrest" is a variant of the tort of false imprisonment, and that tort is used to analyze an alleged Fourth Amendment violation in the § 1983 context. *See Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995). To prevail, a plaintiff must prove four elements: "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Broughton v. New York*, 335 N.E.2d 310, 314 (N.Y. 1975) (internal citations omitted). Here, defendants argue that plaintiff cannot satisfy the fourth element – that the arrest was not privileged –

---

[5] Plaintiff clarifies that he is only pursuing his false arrest and false imprisonment claim against Detective Duguid and Detective Benero. (Pl.'s Reply ¶ 7(a).) Accordingly, as stated *supra* n.1, to the extent such a claim was alleged in the complaint against all defendants, that claim as against Detective Carter, Officer Alicea and Officer Moreno is dismissed at the outset. With respect to any unlawful search claim, plaintiff also clarifies that he is only pursuing an unlawful search claim, based on an alleged strip search, against defendant Moreno. Plaintiff did not allege an unlawful strip search claim in his complaint and as discussed *infra*, the request to amend the complaint to add such a claim is denied.

5

asserting that the arrest was supported by probable cause. *Fulton v. Robinson*, 289 F.3d 188, 195 (2d. Cir. 2002) ("A § 1983 claim of false arrest based on the Fourth Amendment right to be free from unreasonable seizures may not be maintained if there was probable cause for the arrest."); *see also Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (holding that probable cause is a "complete defense to an action for false arrest").

"When an arrest is made without a warrant and probable cause is raised as a defense, the government bears the burden to demonstrate the existence of probable cause." *Ahern v. City of Syracuse*, 411 F. Supp. 2d 132, 147 (N.D.N.Y. 2006). Law enforcement officers have probable cause to arrest when "they have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 414 (2d Cir. 1999). In evaluating whether probable cause existed, the court "consider[s] the facts available to the officer at the time of the arrest." *Ricciuti v. N.Y. City Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997) (citing *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569 (2d Cir. 1996)).

### 3. Qualified Immunity

The doctrine of qualified immunity shields government officials from civil liability if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. As the Second Circuit has noted, "[t]his doctrine is said to be justified in part by the risk that the 'fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.'" *McClellan v. Smith*, 439 F.3d 137, 147 (2d Cir. 2006) (quoting *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999) (quotation omitted)). Thus, qualified immunity is not merely a defense, but rather is also "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Accordingly, the availability of qualified immunity should be decided by a court "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). "In resolving questions of qualified immunity, courts are required to resolve a 'threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry.'" *Scott v. Harris*, – U.S. – , 2007 U.S. LEXIS 4748, at *9 (Apr. 20, 2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

When analyzing qualified immunity in the context of a suit for damages based on an arrest allegedly without probable cause, a police officer is immune from such suit "'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" *Posr*, 180 F.3d at 416 (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)). The Second Circuit has defined this standard, which is often referred to as "arguable probable cause," as follows:

> Arguable probable cause exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in

the light of well established law. It is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials – like other officials who act in ways they reasonably believe to be lawful – should not be held personally liable.

*Cerrone v. Brown*, 246 F.3d 194, 202-03 (2d Cir. 2001) (internal quotations and citations omitted). Moreover, under that standard, "an 'arresting officer is entitled to qualified immunity as a matter of law if the *undisputed facts* and all permissible inferences favorable to the plaintiff show . . . that officers of reasonable competence could disagree on whether the probable cause test was met.'" *McCllellan*, 439 F.3d at 147-48 (quoting *Robison v. Via*, 821 F.2d 913, 921 (2d Cir. 1987)). This same analysis applies to an investigatory stop based on reasonable suspicion. That is, to determine whether an officer is entitled to qualified immunity on an investigatory stop, the Court must examine whether (a) it was objectively reasonable for the officers to believe reasonable suspicion existed or (b) officers of reasonable competence could disagree on whether the reasonable suspicion test was met. *Jackson v. Sauls*, 206 F.3d 1156, 1166 (11th Cir. 2000) ("When an officer asserts qualified immunity, the issue is not whether reasonable suspicion existed in fact, but whether the officer had 'arguable' reasonable suspicion to support an investigatory stop."); *see also Jacobson v. Town of North Haven*, No. 04-CV-1084 (WWE), 2006 U.S. Dist. LEXIS 73372, at *17 (D. Conn. Aug. 18, 2006) (granting summary judgment on the basis of qualified immunity where there was "arguable reasonable suspicion" that some criminal activity was occurring).

### 4. Analysis

For purposes of the summary judgment motion, defendants accept as true plaintiff's claim that Detective Benero "seized" plaintiff upon his initial encounter with plaintiff. (Defs.' Reply Mem. at 2, n.4.) It is undisputed that the officers observed narcotics activity taking place around a car that was located in front of 164-01 Foch Boulevard (Defs.' 56.1 ¶¶ 2, 6; Pl.'s 56.1 ¶ 4.) The record is also clear that (1) plaintiff was in the "immediate vicinity" of Kelly,[6] who plaintiff admits was described as one of the individuals who appeared to be selling narcotics and who was properly arrested (Pl.'s Mem. at 3), and (2) that plaintiff was in the vicinity of the car that was the object of the observed narcotics activity.[7] It is also uncontroverted in the

---

[6] At oral argument, counsel for plaintiff disputed the fact that plaintiff was in the "immediate vicinity" of Kelly. However, plaintiff admitted this fact in response to defendants' 56.1 Statement. (Defs.' 56.1 Stmt. ¶ 9; Pl.'s 56.1 Counter Stmt. ¶ 9.) Moreover, plaintiff stated in his deposition that Kelly was in his "immediate vicinity." (Pl.'s Dep. at 59.)

[7] In plaintiff's Civilian Complaint Review Board Interview (hereinafter "CCRB Inteview"), plaintiff explained: "So, after I leave from the De La Hoya fight, I walked out to the walkway and I'm walking down to a friend's car, I'm about to ask him for a ride. . . . He tells me yeah. And then some guys roll up, which was the police." (Defs.' Ex. D at 4.) Plaintiff also told the investigator, "I'm about to get in my friend's car. And, the same person whose car I was about to get in, went over there in [Kelly's] defense. They went in his car, took his keys out, searched his car, did all this while they got me trying to throw me against the car and everything." (Defs.' Ex. E at 14.) (In

7

record that plaintiff began to move away from the scene as soon as the commotion broke out.[8] Plaintiff argues that he was unlawfully seized "only . . . because he was walking away from the scene of the police activity." (Pl.'s Mem at 2)

In *Illinois v. Wardlow*, the Supreme Court stated:

> An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime. *Brown v. Texas*, 443 U.S. 47 (1979). But officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation. Accordingly, we have previously noted the fact that the stop occurred in a "high crime area" among the relevant contextual considerations in a Terry analysis. *Adams v. Williams*, 407 U.S. 143, 144 and 147-148 (1972).
>
> In this case, moreover, it was not merely respondent's presence in an area of heavy narcotics trafficking that aroused the officers' suspicion but his unprovoked flight upon noticing the police. Our cases have also recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion.

528 U.S. 119, 124 (2000).

The Court finds that defendants had reasonable suspicion to stop plaintiff given the totality of the circumstances based on: (1) the observed narcotics activity in a high crime area; (2) plaintiff's proximity to the individual identified as involved in the sale of narcotics; and (3) plaintiff's effort to walk away from the commotion as soon as it broke out.[9] Even

---

plaintiff's sworn deposition, plaintiff stated that the statements he gave to the CCRB regarding the incident were voluntary, that the answers he gave were not suggested to him in any way, and that the statements were true and accurate. (Defs.' 56.1 ¶ 29.))

[8] At oral argument, counsel for plaintiff stated that plaintiff was not walking away from the scene, bur rather, was standing still with his back to the car, when his arm was grabbed. However, this assertion is not supported by the record, including from plaintiff's own testimony, which makes clear that plaintiff was walking away from the scene as soon as the commotion broke out, and before his arm was grabbed. (*See* Pl.'s Ex. 13 at 121 ("I . . . asked Mr. Sutton to wait when I observed how quickly he had walked away from Mr. Kelly. . . . I placed my hand on his arm as he walked away. . . . He saw us when we exited the vehicle. That was obvious. And he reacted to that and he walked away quickly."); Pl.'s Dep. at 63 (plaintiff testified that when the " tussling broke out" he planned to "step to the side" and to "get away from that because [he] didn't have nothing to do with that"). Furthermore, in plaintiff's own 56.1 Statement, plaintiff admits that, "[a]s the police seized Ronell Kelly, plaintiff heard the commotion and moved away from the tumult, and was seized by defendant Antonio Benero." (Pl.'s 56.1 Stmt. ¶ 9.)

[9] Plaintiff relies on *People v. Moore*, 6847 N.E.2d 1141 (2006), for his position that defendants lacked reasonable suspicion to detain plaintiff. However, in *Moore*, the Court found that officers lacked reasonable suspicion to forcibly detain an individual at gunpoint based on an anonymous phone tip that did not contain "predictive information – such as information suggestive of

8

assuming *arguendo* that defendants lacked reasonable suspicion to stop plaintiff, the Court finds that defendants are entitled to qualified immunity on plaintiff's Fourth Amendment claim based on the initial stop because defendants, at a minimum, had arguable reasonable suspicion to stop plaintiff because it was objectively reasonable for the officers to believe reasonable suspicion existed to stop plaintiff. *See Zieper v. Metzinger*, 474 F.3d 60, 71 (2d Cir. 2007) ("[T]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'") (quoting *Hunter*, 502 U.S. at 229 (internal quotations omitted)).

As the Second Circuit noted in *Holeman*, "[s]uspicious circumstances may have innocent explanations; but the availability of an innocent explanation does not create an issue of fact as to the reasonableness of the suspicion." *Holeman*, 425 F.3d at 191. Here, the suspicious circumstances were plaintiff's presence in a high crime area, his proximity to a location where suspected narcotics sales were taking place, his close proximity to one of the individuals who was identified as a suspected narcotics dealer, and plaintiff's attempt to "get away" from the scene as soon as commotion broke out. The Second Circuit held in *Holeman* that an officer had reasonable suspicion to stop a vehicle where "[the officer] was looking for a reported prowler when he saw the only car on the road driving around the neighborhood randomly or in a circuit . . . [and] he could not see into the car because of . . . window-tinting."[10] 425 F.3d at 191. In recognizing that the officers were in any event entitled to qualified immunity, the Second Circuit also recognized in that "[c]ertainly no clearly established case law holds that the combination of these facts is not enough; and many cases find probable cause where the police draw comparable inferences from facts of comparable suggestiveness." *Holeman*, 425 F.3d at 191 (citing *Wardlow*, 528 U.S. at 125-26) (holding that officer's stop was reasonable where the individual in question was in a high crime area, demonstrated nervous and evasive behavior, and attempted to run away upon seeing the police) and *Arvizu*, 534 U.S. at 277 (holding that officer's stop was reasonable where vehicle turned off of a highway near the Mexican border just before the last checkpoint and the officer learned that the vehicle was registered to a town near the border that was notorious for alien and narcotic smuggling)). Accordingly, to the extent plaintiff argues that the initial seizure was unlawful, that claim fails as a matter of law.

Defendants also argue that reasonable suspicion rose to the level of probable cause

---

criminal behavior," and did not "accurately portray the alleged criminal activity." *Id*. at 499. The facts in the instant case are clearly distinguishable. Furthermore, because *Moore* dealt with a motion to suppress, *Moore* did not address qualified immunity and thus, did not determine whether the officers had "arguable" reasonable suspicion.

[10] The Court noted that "[t]he tinted windows alone would justify the stop if they were so dark that an officer, acting reasonably, would have suspected that there was a traffic violation." *Holeman*, 425 F.3d at 191, n.2 (citing *United States v. Wallace*, 213 F.3d 1216, 1220 (9th Cir. 2000)). However, because the record was unclear on as to the level of darkness of the windows, the Court declined to rest its decision on the sole ground that the tinted windows constituted a traffic violation sufficient to justify the stop. *Id*.

to arrest, when plaintiff resisted the investigatory stop. However, there is a disputed issue of fact that prevents the Court from finding that defendants are entitled to summary judgment on plaintiff's false arrest claim – namely, whether the officers reasonably believed that plaintiff knew they were police officers. Once plaintiff resisted the investigatory stop, the arresting officer had arguable probable cause to arrest when plaintiff resisted, only if plaintiff knew that the men were officers. Plaintiff asserts that because he did not know the individuals he encountered were officers, his actions were justified and thus, defendants lacked probable cause.[11] To the extent plaintiff is suggesting that the Court should look to plaintiff's state of mind to analyze this issue, that argument is simply incorrect. It is axiomatic that "probable cause lies not in the subjective intentions of the arestee [sic]; instead, it lies with the 'facts available to the officer at the time of the arrest and immediately before it.'" *Lovelace v. City of New York*, No 02-CV-5398 (FB), 2005 U.S. Dist. LEXIS 3549, at *6 (E.D.N.Y. Mar. 9, 2005) (quoting *Caldarola*, 298 F.3d at 162). However, there is still an issue as to whether the *officers* reasonably believed that plaintiff knew they were officers. It is undisputed that the officers were in plain clothes, acting in an undercover capacity. Plaintiff alleges that Detective

---

[11] In support of plaintiff's motion for summary judgment on the excessive force claim, as discussed *infra*, plaintiff argues that he is entitled to summary judgment because the criminal trial court previously decided that the officers had failed to identify themselves. Because this argument is also relevant to plaintiff's false arrest claim, the Court addresses this argument with respect to this claim. Specifically, in plaintiff's criminal case, the court held:

> In reviewing the People's case it is clear that the officers were all dressed in plainclothes and that not one of the officers identified himself as a police officer to the Defendant at any time during the incident in question. . . . The officers did not unambiguously identify themselves to Defendant Sutton as police officers and there was insufficient circumstances, circumstantial evidence to make that inference. The People did not prove their case beyond a reasonable doubt.

(Pl.'s Ex. 5 at 379-80.) The issue in the criminal proceeding was whether defendants could prove beyond a reasonable doubt that plaintiff was aware defendants were officers. (*Id*. at 379.) In holding that the People had failed to prove their case beyond a reasonable doubt, the criminal trial court noted that there was testimony that an officer had displayed his shield when exiting the vehicle and testimony from another officer that he did not recall whether he announced he was an officer. (*Id*. at 377-78.) Contrary to plaintiff's assertion, collateral estoppel does not apply in the instant case. It is well established that New York City and City employees are not in privity with New York State and the District Attorney, and to the extent that defendants testified in the criminal proceedings, they were witnesses, not parties. *Jenkins v. City of New York*, 478 F.3d 76, 85-86 (2d Cir. 2007) ("It was therefore error for the district court to preclude defendants from asserting that they had probable cause to arrest [plaintiff]" based upon a no probable cause finding in the state criminal proceeding.) (citing *Brown v. City of New York*, 458 N.E.2d 1250, 1250 (N.Y. 1983) ("The city and the District Attorney are separate entities and . . . do not stand in sufficient relationship to apply the doctrine" of collateral estoppel.)). Moreover, there was a higher standard of proof in the criminal trial, not applicable to the present case. Thus, defendants did not have a full and fair opportunity to litigate the issue of whether they had announced themselves as officers such that they had probable cause to arrest plaintiff.

Benero was not wearing his police shield and did not tell plaintiff that he was a police officer.[12] (Pl.'s 56.1 ¶ 11.) In addition to plaintiff, other individuals at the scene testified that they did not know the men were officers. (*See* Pl.'s Ex. 21 at 58; Pl.'s Ex. 17 at 273.) If a jury credits plaintiff's version of the events – that defendants were not wearing police shields and defendants never announced themselves as police officers in such a way that would reasonably put plaintiff on notice that they were officers – then a reasonable jury could find that defendants lacked probable cause to believe that plaintiff resisted arrest, committed assault or harassment in the second degree or engaged in disorderly conduct.[13] *See e.g.*, *Hamlett v. Town of Greenburgh*, No. 05-CV-3215 (MDF), 2007 WL 119291, at *5 (S.D.N.Y. Jan. 17, 2007) (denying motion for summary judgment on plaintiff's false arrest claim where there was a disputed issue of fact as to whether officer announced himself because it was "material to the issue of whether [the officer] acted reasonably in believing that he had probable cause to arrest Plaintiff for disorderly conduct based on her reaction to the confrontation" and, "[i]f, in fact, [the officer] failed to identify himself to Plaintiff as a police officer, a jury could reasonable conclude that it would not have been objectively reasonable for [the officer] to believe that he had probable cause for an arrest"); *see also Vasquez v. City of Jersey City*, No. 03-CV-5369 (JLL), 2006 WL 1098171 (D.N.J. Mar. 31, 2006) (denying summary judgment on false arrest and excessive force claims where there was a factual dispute as to whether officer dressed in plain clothes had failed to identify himself).

For the same reason, defendants are not entitled to summary judgment based upon a defense of qualified immunity. Specifically, if plaintiff's version is fully credited – namely, that the officers were not wearing badges, did not verbally identify themselves as police officers, and did nothing to indicate to plaintiff that they were police officers – then it would not be objectively reasonable under the doctrine of qualified immunity for the defendants to believe they had probable cause to arrest based upon plaintiff's reaction to them. *See McClellan*, 439 F.3d at 147-49 (holding that the officer was not entitled to qualified immunity on summary judgment motion where, among other things, plaintiff disputed whether the officer had identified himself in such a manner that plaintiff believed he was a police officer); *see generally Curry v. City of Syracuse*, 316 F.3d 324, 333 (2d Cir. 2003) (noting that "credibility assessments, choices between

---

[12] At oral argument, defendants asserted that because plaintiff consistently referred to the individuals as police in his CCRB interview, plaintiff knew the individuals were officers and is only now denying such knowledge. However, construing the evidence in a light most favorable to plaintiff, the Court finds that such statements by plaintiff were not admissions but merely demonstrate that plaintiff learned, at some time after the events giving rise to this action, that the individuals were officers.

[13] To the extent defendants are arguing that, putting aside the disputed issue of fact of whether the officers identified themselves, that there was sufficient probable cause, or arguable probable cause under a qualified immunity analysis, to arrest plaintiff based on the circumstances that existed giving rise to reasonable suspicion to stop, the Court rejects such an argument at this juncture. Though defendants had reasonable suspicion to *stop* plaintiff for the reasons explained *supra*, there is an issue of fact as to whether defendants had probable cause or arguable probable cause to *arrest* plaintiff based on those circumstances, that precludes summary judgment on this issue.

11

conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment") (internal quotation marks and citations omitted).

The Court recognizes the fast-moving circumstances and the inherent dangers that law enforcement officers routinely confront in undercover narcotics investigations, and this case is no exception. Thus, the Court must take into account such realities in analyzing the legal issues presented by this type of police encounter, including as it relates to qualified immunity. However, after analyzing the totality of the circumstances in the instant case under the applicable standard, the disputed factual issues preclude the false arrest claim from being resolved by way of summary judgment. *See, e.g.*, *Williams v. City of Mount Vernon*, 428 F. Supp. 2d 146, 156 (S.D.N.Y. 2006) ("Of course, we respect the fast-paced and potentially dangerous situation the arrest of a narcotics suspect poses to law enforcement personnel. However, the presently known facts leave the reasonableness of the officers' actions in question.").

Accordingly, the Court finds that summary judgment for either party on plaintiff's false arrest claim against defendants Detective Duguid and Detective Benero is unwarranted.[14]

### B. Malicious Prosecution[15]

To state a claim of malicious prosecution pursuant to 42 U.S.C. § 1983, a plaintiff must demonstrate that (1) the defendant commenced or continued a criminal proceeding against the plaintiff; (2) the proceeding terminated in plaintiff's favor; (3) there was no probable cause for the criminal proceeding; and (4) the defendant initiated the criminal proceeding out of actual malice. *DiBlasio v. City of New York*, 102 F.3d 654, 657 (2d Cir. 1996).

Defendants argue that plaintiff cannot establish that Detective Duguid initiated the criminal proceeding, lacked probable cause, or acted maliciously. It is well settled that a grand jury indictment creates a presumption of probable cause on a claim of malicious prosecution. *Savino v. City of New York*, 331 F.3d 63, 68 (2d Cir. 2003). However, the Second Circuit has noted that the presumption of probable cause created from a grand jury indictment "may be rebutted by evidence of various wrongful acts on the part of police: 'If plaintiff is to succeed in his malicious prosecution action after he has been indicted, he must establish that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken

---

[14] Though it appears Detective Duguid joined in plaintiff's arrest after Detective Benero, if plaintiff's version is fully credited, a reasonable jury could also find that it was not objectively reasonable for Detective Duguid to believe that, based on plaintiff's interaction with Detective Benero, plaintiff knew that the men were officers. Accordingly, summary judgment as to the false arrest claim against Detective Duguid is also inappropriate, including on the issue of qualified immunity.

[15] In plaintiff's reply in further support of his motion for summary judgment, plaintiff narrows his cause of action such that plaintiff is pursuing a malicious prosecution claim only against defendant Detective Duguid. (Pl.'s Reply at ¶ 7(b)). Accordingly, to the extent plaintiff's complaint alleged claims of malicious prosecution against the remaining defendants, those claims are dismissed at the outset.

in bad faith.'" *McClellan*, 439 F.3d at 145 (quoting *Colon v. City of New York*, 455 N.E.2d 1248, 1251 (N.Y. 1983)); *see also Savino*, 331 F.3d at 73 ("In order to survive a motion for summary judgment on the malicious prosecution claim, [plaintiff] must . . . submit[] evidence sufficient for a reasonable jury to find that his indictment was procured as a result of police conduct undertaken in bad faith.").

Here, plaintiff argues that his indictment was obtained by fraud or untruthful testimony. (Pl.'s Mem. at 13.) Specifically, plaintiff argues that defendant Detective Duguid made two false statements of material fact to the grand jury: (1) defendant Detective Duguid testified to the grand jury that he had announced himself as a police officer at the time of the arrest, despite testimony at the criminal trial in which he stated, "I don't recall making a statement, no" (Pl.'s Ex. 12 at 62); and (2) defendant Detective Duguid testified to the grand jury that plaintiff had been identified as a participant in the drug activity, a statement that was allegedly contradicted at plaintiff's criminal trial. (Pl.'s Mem. at 14.)

"To establish that [Detective Duguid] committed perjury before the grand jury sufficient to overcome the presumption of the existence of probable cause, [plaintiff] 'would have to submit evidence in admissible form which establishes that [defendant] willfully and corruptly gave false testimony under oath as to a matter material to the issue or point in question.'" *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 422 (S.D.N.Y. 2002) (quoting *Scheiner v. Wallace*, No. 93-CV-0062 (RWS), 1996 U.S. Dist. LEXIS 16315, at *22 (S.D.N.Y. Oct. 21, 1996)). Plaintiff cannot "rebut the presumption of probable cause with mere 'conjecture' and 'surmise' that his indictment was procured as a result of conduct undertaken by the defendants in bad faith." *Savino*, 331 F.3d at 73.

Plaintiff alleges that Detective Duguid did not announce himself as an officer and that Detective Duguid secured the grand jury indictment in bad faith by falsely testifying that he had announced himself as an officer. In support of plaintiff's argument, plaintiff points to Detective Duguid's criminal trial testimony, where Detective Duguid could not recall whether he had announced himself as an officer. Though Detective Duguid's later inability to recall whether he had announced himself is not itself necessarily indicative of plaintiff's argument that Detective Duguid perjured himself before the grand jury, there is a disputed issue of fact (apart from his testimony at the criminal trial) as to whether Detective Duguid did in fact announce himself and thus, whether the grand jury testimony was truthful. If plaintiff's version of the events is taken as true – that is, that Detective Duguid did not announce himself as an officer, but told the grand jury that he did – a jury could reasonably conclude that the indictment was secured through bad faith or perjury.[16] *See McClellan*, 429 F.3d at 146

---

[16] In plaintiff's second point, plaintiff contends that Detective Duguid told the grand jury that plaintiff had been identified as involved as a participant in the drug activity. However, Detective Duguid did not testify in the grand jury that plaintiff was identified as a participant in the drug activity; rather, Detective Duguid testified, "I was driving the vehicle that night, I pulled up along side two males standing on the sidewalk next to a parked vehicle. I parked right next to that vehicle. I exited my auto, went around to the front . . . Detective Alicea was also with us. Him and I approached one subject while Detective Bonero [sic] approached a second subject, later known to me as Jermaine Sutton." (Detective

13

(denying summary judgment on plaintiff's malicious prosecution claim against officers where factual issues were disputed and there were inconsistencies in defendant's version of the events); *see also Brome v. City of New York*, No. 02-CV-7184 (WHP), 2004 U.S. Dist. LEXIS 3943, at *18 (S.D.N.Y. Mar. 15, 2004) ("[B]ecause a question of fact exists as to [the detective's] account of the events leading up to plaintiff's arrest . . . plaintiff has created a triable issue of fact to rebut both the presumption of an independent prosecutorial decision and the presumption of probable cause arising from the indictment.") (citing *Ricciutti*, 124 F.3d at 130 and *Savino*, 331 F.3d at 73). Thus, there is a disputed issue of fact regarding whether false testimony was given to the grand jury, such that summary judgment is unwarranted. For the same reason, there is also an issue of fact as to whether Detective Duguid acted with malice. More specifically, the resolution of the disputed issue over whether defendants lacked probable cause, and whether Detective Duguid lied to the grand jury, could provide a basis for a reasonable jury to infer that Detective Duguid acted with malice.[17] *Lowth*, 82 F.3d at 573 ("In most cases, the lack of probable cause – while not dispositive – tends to show that the accuser did not believe in the guilt of the accused, and malice may be inferred from the lack of probable cause.") (internal quotation omitted); *Mesiti v. Wegman*, 763 N.Y.S.2d 67, 70 (N.Y. App. Div. 2003) ("[T]he jury was able to 'infer the existence of actual malice from the fact that there was no probable cause to initiate the proceeding.'") (quoting *Martin v. City of Albany*, 364 N.E.2d 1304, 1307 (N.Y. 1977)). Finally, to the extent defendants argue that Detective Duguid did not "initate" the criminal proceeding because the chain of causation was broken, given the disputed issue of fact, that argument also fails on summary judgment. *White v. Frank*, 855 F.2d 956, 962 (2d Cir. 1988) ("As with the grand jury, . . . the public prosecutor's role in a criminal prosecution will not necessarily shield a complaining witness from subsequent civil liability where the witness's testimony is knowingly and maliciously false.").

In sum, to grant summary judgment on this claim of malicious prosecution would require the Court to make an assessment of credibility, and such an assessment is inappropriate on a motion for summary judgment. *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997) ("[C]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment."). Therefore both parties' motions for summary judgment

---

Duguid Grand Jury Test. at 4-5.) Detective Duguid did not testify to the grand jury that he was at the location in response to a call regarding drug activity, but instead merely stated that he had appeared at the location in response to a call from other officers acting undercover at the location. (*Id*. at 4.) The focus of the testimony was the struggle that ensued between the officers and plaintiff when they attempted to stop him. In any event, the Court finds that there are issues of fact regarding whether defendants had announced themselves as officers and whether Detective Duguid was acting in bad faith when he testified before the grand jury that he announced himself as an officer.

[17] Furthermore, it is undisputed that plaintiff bit Detective Duguid (Defs.' 56.1 ¶ 22), which a reasonable jury could find motivated Detective Duguid to allegedly prosecute plaintiff in bad faith.

must be denied.

For the same reason, the Court must deny defendants' motion based on qualified immunity because, if plaintiff proves that Detective Duguid knowingly gave false testimony to the grand jury to secure the indictment, qualified immunity would not be available. *McClellan*, 439 F.3d at 149 ("The District Court generally failed to heed the rule that resolution of genuine factual issues is inappropriate on motions for summary judgment based on qualified immunity.").

C. Excessive Force[18]

Plaintiff moves for summary judgment on the excessive force claim against Detective Duiguid, Detective Benero and Officer Moreno.[19] A police officer's use of force is excessive in violation of the Fourth Amendment, "if it is objectively unreasonable 'in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation.'" *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). More specifically, "[d]etermining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (citations and internal quotations omitted).

Physical force is often necessary when effectuating arrests or executing search warrants and, thus, "not every push or shove" is unconstitutionally excessive, "even if it may later seem unnecessary in the peace of a judge's chambers." *Maxwell*, 380 F.3d at 108 (citation and internal quotation marks omitted). The analysis involves an inquiry into the totality of the circumstances, "including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of others and whether he is actively resisting arrest." *Sullivan v. Gagnier*, 225 F.3d 161, 165 (2d Cir. 2000) (citations

---

[18] Plaintiff's reply in further support of his motion for summary judgment clarifies that he is only pursuing his claim of excessive force against Detective Benero and Detective Duguid. (Pl.'s Reply ¶ 7(c).) Accordingly, to the extent plaintiff's complaint alleged a claim of excessive force against the remaining defendants, that claim is dismissed as to Detective Carter, Officer Alicea and Officer Moreno.

[19] Plaintiff moves for summary judgment on the excessive force claim on two theories: (1) that the underlying arrest was illegal and (2) because plaintiff acted reasonably to defend himself. Even assuming *arguendo* the Court found the underlying arrest was illegal, plaintiff's reliance on *Atkins v. City of New York*, 143 F.3d 100 (2d Cir. 1998), to establish that any force used during the course of an illegal arrest is excessive, is misplaced. The Second Circuit recently clarified in *Papineau* that

> [t]he *Atkins* court clearly did not intend to create or substitute a new standard for arrests lacking probable cause, and the reasonableness test established in *Graham* remains the applicable test for determining when excessive force has been used, including those cases where officers allegedly lack probable cause to arrest.

*Papineau*, 465 F.3d at 62. Accordingly, the Court declines to hold defendants liable for the claim of excessive force under the *per se* standard put forth by plaintiff.

omitted). "Officers may not . . . gratuitously inflict pain in a manner that is not a reasonable response to the circumstances." *Diaz v. City of New York*, No. 00-CV-2944 (JMA), 2006 U.S. Dist. LEXIS 93923, at *18 (E.D.N.Y. Dec. 29, 2006) (citing *Amnesty Am.*, 361 F.3d at 124). However, "the reasonableness inquiry does not allow [the court] to substitute [its] own viewpoint; [the court] must judge the officer's actions 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Papineau v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006) (quoting *Graham*, 490 U.S. at 396).

Relying on N.Y. Penal Law § 35.15, plaintiff argues that he was justified in his use of force against the officers when they sought to arrest him, and therefore, defendants' use of force was excessive. (Pl.'s Mem. at 12.) Under N.Y. Penal Law § 35.15, "a person 'may' use physical force to defend himself or a third person, and his conduct, which would otherwise constitute an offense, is simply not criminal." *People v. McManus*, 496 N.E.2d 202, 204 (N.Y. 1986). As a threshold matter, since there is a disputed issue of fact as to whether the police identified themselves and whether they had probable cause to arrest, these disputed factual issues also preclude summary judgment on the issue of whether plaintiff was justified in the actions he took. Plaintiff admits using force against the officers in an effort to resist. Plaintiff reacted to Detective Benero's initial contact by pulling his arm away, and by pushing and slapping Detective Benero's hands away. (Pl.'s 56.1 ¶ 12.) Plaintiff also admits to biting Detective Duguid who then responded by striking plaintiff. An officer's use of force is judged from the perspective of a reasonable officer. The disputed issues regarding whether the officers identified themselves, and regarding the sequence and level of force by the various parties involved, cannot be resolved by summary judgment. In short, there are issues of fact regarding whether the officers' conduct was reasonable in light of the circumstances. *See McCrory v. Brown*, No. 95-CV-4913 (LLS), 1998 U.S. Dist. LEXIS 1426, *5 (S.D.N.Y. Feb. 6, 1998) (denying plaintiff's motion for summary judgment where there was a question of fact as to whether "[defendant officer] hit [plaintiff] sadistically and without provocation, or plaintiff lunged at [defendant officer] who reacted in self-defense or an attempt to restore order"); *Smith v. Marcellus*, 917 F. Supp. 168, 174 (W.D.N.Y. 1995) ("Whether the proof will establish that this type and amount of force reasonably correlates to the need for application of force, and the weight to be accorded this factor . . ., are issues best left for the trier of fact."). Accordingly, plaintiff's motion for summary judgment on the excessive force claim is denied.[20]

---

[20] In a footnote in defendants' reply, defendants seek dismissal of plaintiff's claims of excessive force as against Detective Benero and Officer Moreno. Plaintiff withdrew his claim of excessive force against Officer Moreno. (*See supra* n.10.) As to Detective Benero, the Court recognizes that there may be certain circumstances where the alleged unconstitutional act and injury are so *de minimis* that the act cannot rise to a constitutional violation as a matter of law. *See, e.g., Vogeler v. Colbath*, No. 04-CV-6071 (LMS), 2005 WL 2482549, at *11 (S.D.N.Y. Oct. 6, 2005) (granting summary judgment for defendant where plaintiffs failed to demonstrate that the alleged action by the police officer "was any more than *de minimis* force exerted during the course of an arrest following the raid of a suspected drug trafficking locale"); *Johnson v. Police Officer #17969*, No. 99-CV-3964 (NRB), 2000 WL 1877090, at *5 (S.D.N.Y. Dec. 27, 2000) (dismissing excessive

## D. Plaintiff's Motion to Amend

Plaintiff seeks leave to amend the complaint to add a claim of unlawful strip search. Federal Rule of Civil Procedure 15(a) states that leave to amend "shall be freely given when justice so requires." "However, this rule must be interpreted in light of the overarching goal of 'secur[ing] the justy, speedy, and inexpensive determination of every action." *Harris v. Lantz*, No. 05-CV-527 (RNC), 2007 U.S. Dist. LEXIS 23356, at *6 (D. Conn. Mar. 30, 2007) (quoting *United States v. Cont'l Ill. Nat'l Bank & Trust*, 889 F.2d 1248, 1254 (2d Cir. 1989)). Thus, "[l]eave to amend should be freely granted, but the district court has the discretion to deny leave if there is a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party." *Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002). Denial of leave to amend is "within the sound discretion of the district court." *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (holding that there was no abuse of discretion by district court in denying leave to amend two and one-half years after the action had commenced and three months prior to the scheduled trial date). This action commenced over two years ago, discovery in this case has closed, the parties have briefed the instant cross-motions for summary judgment, and a trial date has been set. Though plaintiff states in his affidavit attached to the motion for summary judgment that he "believe[s]" the individual who strip searched him was defendant Moreno, at his deposition plaintiff testified that he did not "recall" who strip searched him and did not recall whether the individual who strip searched him was even an officer from the encounter leading to the arrest. (Pl.'s Dep. at 113-114.) Even if the issue first arose in plaintiff's deposition, plaintiff has provided no explanation for why this claim was not in the complaint or why the motion to amend was not made at some earlier time before the close of discovery or before the motion practice began in this case. Allowing the amendment at this juncture would require the reopening of discovery to permit this factual issue to be fully explored by both sides and could also potentially result in additional motion practice; therefore, at this late date, granting plaintiff's motion to amend would be unduly prejudicial to defendants and result in undue delay. Accordingly, plaintiff's request to add an illegal strip search claim is denied.

---

force claim based on admission that plaintiff resisted arrest and only alleged minor injuries). However, a plaintiff need not sustain severe injury to maintain a claim that the use of force was objectively unreasonable under the Fourth Amendment. *See Maxwell*, 380 F.3d at 108 ("[W]e have permitted a plaintiff's claim to survive summary judgment on allegations that, during the course of an arrest, a police officer twisted her arm, 'yanked' her, and threw her up against a car, causing only bruising.") (citing *Robison*, 821 F.2d at 924-25); *see also Hayes v. New York City Police Dep't*, No. 06-CV-0595, 2007 WL 130332, at *1 (2d Cir. Jan. 16, 2007) (summary order) (citing *Maxwell* and noting that "we have permitted claims to survive summary judgment where the only injury alleged is bruising"); *Robison*, 821 F.2d at 924 ("If the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe."). Here, plaintiff testified that the officers, including Benero, pushed him up against a car and "punched [him], kicked [him], . . . [and put a] foot in [his] back." (Pl.'s Dep. at 81.) Though the full degree of Benero's involvement in the struggle is unclear, the Court declines to hold as matter of law that the alleged use of force by defendant Benero during the struggle and arrest was *de minimis* or reasonable as a matter of law.

17

III. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted as to the unlawful seizure claim as it relates to the investigatory stop, and denied as to plaintiff's false arrest and malicious prosecution claims. Plaintiff's cross-motion for summary judgment is denied in its entirety. Plaintiff's motion to amend the complaint is also denied. Accordingly, the remaining claims in this case are plaintiff's claims for false arrest/false imprisonment against Detective Duguid and Detective Benero, plaintiff's malicious prosecution claim against Detective Duguid, and plaintiff's claim of excessive force against Detective Duguid and Detective Benero. Thus, Detective Carter, Officer Alicea and Officer Moreno are dismissed from this action and the Clerk of the Court shall enter judgment in their favor and remove them from the caption of this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: May 16, 2007
Central Islip, New York

\* \* \*

The attorney for plaintiff is John Cobb, Esq., Cobb & Cobb, Esqs., 233 Route 17, # 5, Tuxedo, New York 10987. The attorney for defendants is Michael A. Cardozo, Esq., Corporation Counsel of the City of New York, by Anna Nguyen, Esq., 100 Church Street, New York, New York 10007.